[No. 7127.   Decided March 17, 1908.]

MINA GAUTHIER *et al., Respondents,* v. WOOD & IVERSON,
*Appellant.*[1]

MASTER AND SERVANT—NEGLIGENCE—OPERATION OF RAILROAD—DE-
FECTIVE COUPLING—CONTRIBUTORY NEGLIGENCE—QUESTIONS FOR JURY.
The questions of negligence of the defendant and contributory neg-
ligence of the deceased and his assumption of risks, are primarily
for the jury, and a verdict for plaintiffs, upheld by the trial court
on motion for new trial, cannot be disturbed by the appellate·
court, where there was evidence that a coupling between the tender
of a logging engine and a car was defective and that the defect
could have been discovered by reasonable inspection; that in back-
ing a train of cars up a grade, the coupling broke, and the deceased,
a fireman, who was standing on the foot board for the purpose of
applying sand to the rails, was caught and crushed between the
tender and the logs on the car, it being rulable for him to do so
when sand was necessary; although the place was known to be a
dangerous place, and the engineer had not ordered the sand.

APPEAL—REVIEW—HARMLESS ERROR.   It is not prejudicial error
to exclude evidence of a witness as to a warning of danger given to
deceased, where subsequently another witness testified fully to the
transaction and the same was not disputed but became an admitted
fact in the case.

CONTINUANCE—GROUNDS—ABSENCE OF WITNESSES—NECESSITY OF
SHOWING.   It is not error to refuse a continuance to defendant asked
for at 4:30 o'clock until the next day, in order to meet evidence of
the plaintiff on reopening the case for the purpose of introducing
evidence not proper in rebuttal, where the defendants failed to make
any showing pursuant to Bal. Code, § 4977, as suggested by the court
at the time, but merely stated that their witnesses had been excused
and it would be necessary to hunt them up and consult with them.

Appeal from a judgment of the superior court for Sno-
homish county, Black, J., entered April 15, 1907, upon the
verdict of a jury rendered in favor of the plaintiffs, in an
action for damages for the death of a fireman employed upon
a logging train.   Affirmed.

*Cooley & Horan,* for appellant.

*Sachs & Hale* and *Brownell & Coleman,* for respondents.

[1]Reported in 94 Pac. 654.

ROOT, J.—This action was brought by the widow and minor children of Benjamin Gauthier, to recover damages on account of his death, which was occasioned while working as a fireman upon a logging train of appellant. From a judgment in the sum of $15,000 in favor of plaintiffs, defendant appeals.

At the time of the accident in question, defendant's train had a crew consisting of the engineer, one brakeman, and Gauthier. The president of the road, one Wood, was with the crew at the time. The engine was one built purposely for logging and of the type known as "Climax." The coupling between the tender of the engine and the first car was composed of a metal pipe about seven feet long and three inches in diameter, the ends of which had been plugged with an iron or steel eye into which a bolt was dropped. A wooden beam was sometimes used in place of the pipe for the coupling. This connecting appliance is commonly called a "rooster." On the day in question the crew were attempting to back the train, consisting of three loads of logs and three sets of empty trucks, up a four and one-half per cent grade. The customary method of doing this work was as follows: The wheels of the truck farthest up the hill were blocked so as to prevent it from moving forward down the grade. The engineer would then move the engine slightly forward until all the "slack" in the connections between the trucks had been taken up. He would then reverse his engine, apply the steam, and endeavor to start the train by bumping one truck-load and overcoming its inertia, then projecting that truck against the next, and in this manner moving one after another until all should finally be in motion. On this occasion Wood and Gauthier were on the engine with the engineer when the train became "stalled," and the engineer ordered Gauthier to block the wheels, or made a suggestion that they should be blocked. Gauthier and Wood immediately left the engine, one on either side, and started for the rear of the train. Wood reached there and blocked the wheels on his side. It is uncertain

whether Gauthier put in a block. The engineer tried twice to back the train, but each time failed. He tried it a third time, when the rooster between the tender and the first car or truck "buckled" or bent so that the end of the tender was forced against the ends of the logs on the car. The engineer, realizing that something unusual had occurred, stopped his engine and went to investigate. He found Gauthier with his head crushed between the tender and the loaded car. Death had been instantaneous. At the rear of the tender was a foot board upon which Gauthier was standing when killed. He had evidently gone thereupon for the purpose of applying sand to the track from sand boxes attached to the rear of the tender. The levers by which the sand was applied were found turned and the sand running immediately after the accident. No one saw Gauthier go there, and his presence there was unknown to the engineer when he attempted to back his train. He had received no order at that time to apply the sand. An examination of the rooster revealed a defective welding which, under the unusual force applied by the engine, caused the "buckling." Logs had been sometimes known to slip upon the trucks and crush against the end of the tender, and it was for that reason regarded as a dangerous place, and Gauthier was aware of this danger, having been present when such occurrences had taken place, and had heard other people warned about being there.

The negligence charged against the defendant was that the rooster was defective, that the defect was one which could have been discovered by reasonable inspection, and that the load was too heavy to be backed up the steep grade in the manner and by the appliances employed at that time. The defendant interposed the defenses of contributory negligence and assumed risk. The principal contention of the appellant is, that Gauthier was guilty of contributory negligence; that he knew this was a dangerous place; that he was not in the line of duty in going there at the time of this accident; that he could have performed the duty of sanding, if necessary, without go-

ing upon the foot board, and that he had gone of his own volition from the place where the engineer ordered him, and without the latter's knowledge, into a place of danger, unnecessarily. Respondents met this by evidence going to show that it was rulable for the fireman to turn on the sand when he thought it was necessary, without waiting for a special order to that effect from the engineer; that it was impracticable and dangerous to apply and shut off the sand without climbing onto the foot board; that one standing upon the foot board could watch the slipping of logs, which was the principal danger to be apprehended, and jump at any time to avoid such danger. The sand was necessary at times to keep the wheels of the locomotive from slipping when pushing a heavy load up a steep grade, and was applied for this purpose.

Appellant claims that the engineer had not at this time ordered, and did not need, the sand, and that it was really a hindrance instead of a help. Respondents offered evidence to show that equally competent trainmen might differ as to whether the sand was necessary in a given instance, and that the fireman being along by the side of the train could see the condition of the track and judge of the necessity for sand even better than the engineer, who, on account of his position, could not see the rail when they were backing the train. The evidence on the issues presented was extensive, and we do not believe it would serve any good purpose to analyze it in detail. There was a sufficient amount of competent evidence to sustain a finding of negligence on the part of the appellant. The defenses of contributory negligence and assumed risk, being of an affirmative character, could be sustained only by a preponderance of the evidence. There was a substantial amount of competent evidence tending to establish contributory negilgence and the defense of assumption of risk, and sufficient if the same had been accepted by the jury. But there was also a substantial amount of competent evidence tending to defeat each and both of these defenses. In a con-

flict of this kind, the question becomes primarily one for the jury, and its finding is usually conclusive unless disturbed by the trial court. There being, upon the material issues in this case, a substantial conflict in the evidence, and room for a difference of opinion among men of reasonable minds as to what the evidence establishes, we cannot disturb the verdict even though we might not agree with all the findings of the jury. In such a case the law places the responsibility upon the jury and the trial court, and does not permit the appellate court to disturb their conclusion.

The appellant offered the testimony of one Payne to show that one of the officers of the company, at a time previous to the accident, ordered one of the other employees out from between the loaded car and the tender, telling him the place was dangerous, such warning being given in the presence and hearing of Gauthier. This testimony was excluded by the court, and its exclusion is assigned as error. We think the ruling of the court was erroneous, but do not think it constituted reversible error, for the reason that subsequently another witness was permitted to testify fully to the transaction referred to and no evidence was introduced or effort made to in any way dispute the correctness of the testimony thus offered. It therefore became virtually an admitted fact in the case.

Upon the rebuttal respondents offered certain testimony which was objected to as not being proper in rebuttal. The objection was sustained. Thereupon respondents' attorneys asked to have the case reopened for the purpose of introducing this testimony, which had reference to the character of certain appliances. The court granted this request and respondent put in the evidence desired. This occurred at about 4:30 o'clock in the afternoon. Thereupon the attorneys for appellant requested a continuance until the next morning, stating to the court that their witnesses, by whom they had expected to meet this evidence, had been excused and had left the courtroom, and that it was necessary to find and consult

with them before defendant could meet the evidence just introduced. The presiding judge stated that the court could not adjourn to give parties an opportunity to hunt up their witnesses; that they should have been kept at hand until the trial was finished. He, however, suggested to appellant's attorneys that a showing be made. Whereupon appellant's attorneys stated that they would make no further showing. The motion for a continuance was then denied. Bal. Code, § 4977 (P. C. § 591), provides the method of making a showing for a continuance. No compliance was made with the provisions of this statute; and although we are inclined to think that appellant was entitled to a continuance, had it made the showing in the manner provided by the statute, or in any manner suggested by the trial court, yet we cannot hold the ruling of the court erroneous in the absence of such a showing.

Several other assignments of error are presented touching matters of instructions and the introduction or exclusion of evidence. We have examined them all, but fail to find any reversible error. The judgment of the honorable superior court is therefore affirmed.

HADLEY, C. J., MOUNT, and CROW, JJ., concur.