WELCH *v.* CHILDERS.

(In Banc. Nov. 22, 1943.)

[15 So. (2d) 690. No. 35462.]

H. F. Jones, of Belzoni, for appellant.

**J. M. Forman**, of Indianola, for appellee.

Argued orally by **H. F. Jones**, for appellant.

**Anderson, J.**, delivered the opinion of the court.

The question in this case is whether or not the guardian of a minor will be permitted to file and have allowed the final account of his guardianship where he has failed to make annual accounts, as required by statute, and the expenditures shown by such final account were not authorized by previous orders of the chancery court, and are unsupported by any vouchers. The chancellor held in the affirmative, which we are of opinion was error.

The appellant, Agnes Lee Childers Welch, and appellee, S. B. Childers, are half brother and sister, their father being the same. She was born in 1917. Shortly thereafter her mother died. Her father, on account of the state of his health, was not able to care for and maintain her. When the child was about nine years of age her brother, the appellee, took her and her father into his home and maintained and supported her until she was nineteen years of age, when she married.

The mother left a small estate; the child's share in it was $566.66 in money. Her brother, the appellee, was appointed her guardian by the chancery court, giving the required bond, and doing the other necessary things to perfect such guardianship. He thereupon got an order of the chancery court to deposit these funds in the Bank of Inverness on time certificate bearing 4% interest per annum, which he did. In 1931 the appellee withdrew these funds from the bank, along with the accumulated interest. In 1943, approximately fifteen years after he

was appointed guardian, he made the final account here involved. He never had theretofore made an annual account with vouchers, as required by statute, nor without vouchers. The allowance of the account was contested by the ward. On the trial, over the objection of the ward, the guardian was permitted to prove, which the chancellor adopted as true, that during the guardianship he not only necessarily expended the entire estate of his ward in her maintenance, support and schooling, but in addition had spent more than four times that amount out of his own funds. On the other hand, the ward testified that she fully earned her keep in services to the guardian and his family; that she did a large part of the housework, and washing and ironing, and in addition worked in the field, hoeing and picking cotton.

Section 1889 of the Code provides, among other things, that every guardian shall, each year, and oftener if required by the court, exhibit an account showing the receipts of all income belonging to the ward, and the disposition thereof, and, in addition, each item of expenditure in the maintenance and education of his ward, and in the preservation and management of the estate, "supported by legal vouchers." Section 1890 provides that the vouchers of a guardian shall not be "received, filed, or allowed unless they conform to . . . the requirements of law relating to the vouchers of executors and administrators." Section 1876, among other things, requires that the chancery court or the chancellor in vacation, shall fix the sum or sums to be expended in the maintenance and education of the ward, and concludes with this language: "But no guardian shall make any expenditure in excess of his ward's income for the ward's support and education without a previous order of the court or chancellor authorizing the same." Section 1877 provides that "if the ward have a father or mother, the court, or chancellor in vacation, shall determine whether the expense of maintaining and educating him shall be borne by his guardian or not." She had a father. Sec-

tion 1893 provides, among other things, that when the guardianship shall end the guardian shall make a final settlement "by making out and presenting to the court, under oath, his final account," which shall contain a distinct statement of all the balances of his annual accounts, either as debits or credits, and also all other charges, expenditures and amounts received and not contained in any previous annual account.

A minor under guardianship is a ward of the chancery court. All receipts and disbursements of his estate are required to be under the authority and direction of the chancery court or the chancellor in vacation. The expenses for the maintenance and support of the ward cannot be proved in any other way. The object of the law is to guard against dishonesty and mismanagement of the estate by the guardian. The result is that the court erred in permitting the guardian to prove in the manner adopted by him his expenditures in the maintenance and support of the ward. The law does not leave the amount of the expenditures by the guardian for the maintenance, support and education to his discretion. "The sum must be fixed by the court." If the guardian contracts therefor without the sanction of the chancery court or chancellor, the liability therefor is personal to him, and he cannot be allowed for it in his accounts for the ward. The guardian has no power to bind the estate of his ward without the sanction of the chancery court or the chancellor, Dalton v. Jones, 51 Miss. 585. The decision in Williams v. Bonner, 79 Miss. 664, 31 So. 207, relied on by the guardian, is not in point. The ward in that case lived in the country, ten miles from Ellisville, with her father, who was also her guardian. She was a girl. She shot herself accidentally, inflicting a very serious wound. The calling of a physician could not be delayed. The father and guardian called a physician from Ellisville, who came immediately and treated the ward. There was no precedent order of the chancery court or chancellor authorizing this to be done. In the emergency the time could not

be spared to get such a previous order. The court held that the physician should be paid for his services out of the ward's estate, putting it on the ground of an emergency. The court said that it was better to sacrifice the estate of the ward than to sacrifice her life. We have no emergency here. There was ample time to get all precedent orders touching the estate of this ward.

These views render it unnecessary to take into consideration the testimony of the ward as to the value of her services to the guardian and his family.

The guardian is liable for the principal of the ward's estate, $566.66, with 4% interest from the time it was deposited in the bank until withdrawn therefrom; and thereafter he is liable for 8% interest per annum, as provided by section 1885 of the Code.

The decree is reversed, and the cause remanded for the entry of final decree corresponding with the decision of this court.

Reversed and remanded.