471 So.2d 396 (1985)
General Lee McCOY, on Behalf of David J. McCoy, a Minor
v.
PREFERRED RISK INSURANCE COMPANY and Singing River Hospital System.
No. 54796.
Supreme Court of Mississippi.
June 5, 1985.
Rehearing Denied July 10, 1985.
E. Foley Ranson, Sadler & Ranson, Ocean Springs, for appellant.
Roy C. Williams, Linda D. Baggett, Robert Wilkinson, Megehee, Brown, Williams & Mestayer, Pascagoula, for appellees.
Before ROY NOBLE LEE, P.J., and HAWKINS and SULLIVAN, JJ.
HAWKINS, Justice, for the Court:
General Lee McCoy, legal guardian of his minor son David James McCoy, appeals from a judgment of the Chancery Court of Jackson County awarding interpleaded insurance proceeds to Singing River Hospital System (Singing River), a Jackson County hospital. These funds were interpleaded by Preferred Risk Insurance Company.
*397 The issue we address on this appeal is the authority of McCoy and his wife as individuals to assign over unto Singing River the uninsured motorist benefits under two liability insurance policies held in the name of McCoy for injuries received by their son David.
Finding the McCoys had no such authority, we reverse as to such assignment of the uninsured motorist benefits. This decision does not affect the right of Singing River to receive all medical benefits for services rendered, as provided in the two policies.

FACTS
Preferred Risk Insurance Company (Preferred) on October 31, 1981, had in effect two liability insurance policies with its named insured General Lee McCoy. McCoy's minor son, David James McCoy, was critically injured that date in an automobile accident with an uninsured motorist.
Each of these policies provided for $2,000 maximum medical pay caused by a motor vehicle accident, and $10,000 maximum insured motorist liability.
David was hospitalized in the Singing River Hospital in Jackson County, and on November 3, 1981, his parents executed an assignment of all benefits due them by Preferred, acknowledging that on November 3 there was due Singing River the sum of $47,271.02.
On November 30 McCoy was appointed legal guardian of his son by decree of the Chancery Court of Jackson County.
Preferred recognized its liability under its policies to pay $4,000 in medical benefits, plus $20,000 in uninsured motorist benefits, and following a dispute as to the lawful recipient, filed a complaint for interpleader on January 7, 1982, making McCoy, David and Singing River parties defendant.
Singing River answered, alleging propriety and necessity of the medical and hospital services rendered David, and attaching an itemized account plus a copy of the assignment.
McCoy answered February 25, 1982, affirmatively alleging inter alia he had no authority individually to assign the benefits due under the policies, that he was later appointed legal guardian, and that the insurance proceeds should be paid to him as legal guardian.
The chancellor ruled that under the insurance policies the son had no interest in the proceeds and the father, as the named insured, had a right to assign the proceeds. A decree was accordingly entered directing release of the funds by the Chancery Clerk over unto Singing River.
The McCoys have appealed.

LAW
The chancellor was correct in that portion of his ruling dealing with medical benefits under the policy. The Medical Expense Benefits under the policy obligate Preferred to pay all reasonable medical expenses, and further authorized Preferred to pay either the insured or the person or organization rendering the medical services.[1] Under each policy the obligation for medical services was due primarily to Singing River and the chancellor so found. The $4,000 medical benefits were due Singing River, irrespective of the assignment.
The chancellor erred, however, as to uninsured motorist benefits. These benefits were due the son, David, who was the person injured, and his parents as individuals *398 had no authority to assign such benefits over to Singing River.
Our Uninsured Motorist Law was first enacted by our legislature in 1966. The preamble to Chapter 524, General Laws of Mississippi 1966, states:
AN ACT to provide that no automobile liability insurance policy shall be issued unless coverage is provided therein for the protection of the insured against loss caused by an uninsured vehicle; to provide the procedure connected therewith; and for related purposes. [Emphasis added]
H.R. 121 (1966).
Section I of this Act provides that no insurance policy shall be issued in this State unless it contains an endorsement or provisions:
undertaking to pay the insured all sums which he shall be legally entitled to recover as damages for bodily injury or death from the owner or operator of an uninsured motor vehicle, ... [Emphasis added]
This act is now codified as Miss. Code Ann. § 83-11-101 (Supp. 1980).
In Rampy, et al. v. State Farm Mutual Automobile Insurance Co., 278 So.2d 428, 432 (Miss. 1973), this Court stated:
In interpreting similar, if not identical statutes, the vast majority of jurisdictions have stated that the purpose of such uninsured motorist laws is to provide protection to innocent insured motorists and passengers injured as a result of the negligence of financially irresponsible drivers.
* * * * * *
[I]ts purpose is to give the same protection to the person injured by an uninsured motorist as he would have had if he had been injured in an accident caused by an automobile covered by a standard liability policy... .
See also: Phillips, A Guide to Uninsured Motorist Insurance Law in Mississippi, 52 Mississippi Law Journal, pp. 255, 256.
Part IV of each policy, Protection Against Uninsured Motorists, contains the following provisions:
To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury", sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured motor vehicle; ...
* * * * * *
Definitions
The definitions under Part I, except the definition of "insured", apply to Part IV, and under Part IV.
"Insured" means:
(a) the named insured and any relative;
(b) any other person while occupying an insured automobile; and ...
* * * * * *
Payment of Loss by the Company
Any amount due hereunder is payable (a) to the insured or (b) if the insured be a minor to his parent or guardian, or (c) if the insured be deceased to his surviving spouse, otherwise (d) to a person authorized by law to receive such payment or to a person legally entitled to recover the damages which the payment represents;...
While McCoy was the named insured under each of the policies, David was also an insured person under each policy when he was injured. The purpose of the uninsured motorist provisions was to compensate David for the injuries and losses he had received. His parents had no more legal right to these benefits than they would have had to a claim David had against the tortfeasor or with the insurance carrier of such tortfeasor, if there had been one.
The entire purpose of the uninsured motorist law would be defeated if the named insured, even though he is the father, could assign away or claim for himself the benefits *399 under the uninsured motorist provisions of a policy.
The judgment of the Chancery Court directed release of the $24,000 to Singing River. This judgment is affirmed insofar as the release of $4,000 to Singing River. As to the remainder, it is reversed and rendered with judgment in favor of McCoy as legal guardian of his son David, against Singing River in the sum of $20,000.
AFFIRMED IN PART; REVERSED AND RENDERED IN PART.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
NOTES
[1] Part II of each policy provides the following regarding Medical Expense Benefits:

To pay all reasonable expenses resulting from bodily injury, sickness or disease, including death resulting therefrom, caused by accident and incurred within one year from the date of accident, for necessary medical, surgical, X-ray and dental services, including prosthetic devices and necessary ambulance, hospital, professional nursing and funeral services, subject to the limits stated below under Limits of Liability.
* * * * * *
The Company may pay the injured person or any person or organization rendering the services and such payment shall reduce the amount payable hereunder for such injury. Payment hereunder shall not constitute an admission of liability of any person or, except hereunder, of the company.