**Sandra Jean BOGGS**

v.

**Thomas F. BOGGS, et al.**

**Civ. A. No. 92–4174.**

United States District Court, E.D. Louisiana.

March 9, 1994.

---

James F. Willeford, New Orleans, LA, for Sandra Jean Boggs.

Jimmy N. Dimos, Monroe, LA, for Thomas F. Boggs.

Guy L. Deano, Jr., Mandeville, LA, for Harry P. Boggs and David B. Boggs.

McNAMARA, District Judge.

This is a declaratory judgment action wherein Plaintiff seeks to have this court declare that ERISA, 29 U.S.C. § 1001 *et seq.*, preempts Louisiana's community property laws. After Plaintiff filed her Motion for Summary Judgment, the parties informed the court that there were no genuine issues of material fact and that this entire matter should be tried on stipulated facts. Having carefully reviewed the stipulated facts, the arguments of counsel and the applicable law, the court renders the following decision.

## I. *FACTS*

Isaac Boggs, Jr. was married to his first wife, Dorothy McDonald Boggs, from the date of his employment with South Central Bell on June 18, 1949 until her death on August 14, 1979. During their marriage, Isaac and Dorothy Boggs had three sons; Thomas Frank Boggs, Harry Maurice Boggs, and David Bruce Boggs, who are the Defendants in this case. Pursuant to Dorothy Boggs' will, Isaac Boggs, Jr. received one-third of her estate and the lifetime usufruct of the remaining two-thirds of the estate, whose naked ownership was inherited by Defendants. The Sworn Descriptive List of assets filed in Dorothy Boggs' succession included the Bell System Savings Plan for Salaried Employees with a value of $42,388.57 at the time of her death, with her one-half interest valued at $21,194.29.

Isaac Boggs, Jr. married Plaintiff, Sandra Boggs, on April 5, 1980, and no children were born of this marriage. Isaac Boggs, Jr. retired from South Central Bell after 36 years of service on September 1, 1985. Upon his retirement, Isaac Boggs, Jr. received $151,628.94 which was the distribution from the BellSouth Management Savings Plan (formerly called BellSouth Systems Savings Plan for Salaried Employees). The entirety of these funds were "rolled over" into an IRA account at Delaware Charter Guarantee Trust Company. Isaac Boggs, Jr. made no withdrawals from the IRA account prior to his death on February 16, 1989, at which time the IRA account was valued at $180,778.05. In addition to the distribution from the Savings Plan, Isaac Boggs, Jr. received monthly retirement payments from September 1, 1985, through the date of his death on February 16, 1989, in the amount of $1,777.67

per month. Thereafter, the survivor's lifetime annuity pension has been paid to Plaintiff, and she was the named beneficiary of the IRA plan.

Under the terms of the BellSouth ESOP, Isaac Boggs, Jr. acquired 96 shares of AT & T stock which were distributed to him when he retired. In addition, the Plan included life insurance policies payable to Plaintiff as the named beneficiary. The BellSouth Management Savings Plan, the ESOP Plan, and all retirement benefits and employee benefit plans of South Central Bell are qualified plans subject to the provisions of The Employee Retirement Income Security Act of 1974 and the Retirement Equity Act of 1984, 29 U.S.C. § 1001, *et seq.* The IRA account at Delaware is a qualified Individual Retirement Account under IRC Section 401, *et seq.*

Two of the Defendants herein, Harry and David Boggs, have filed an action in state court claiming that they are entitled to the following:

1. An accounting of the usufruct enjoyed by Isaac Boggs, Jr. over that portion of the retirement payments attributable to Dorothy Boggs' community interest in the retirement plan and the payment of a percentage of the pension plan payments from September 1, 1985 through February 16, 1989;

2. A percentage of the survivors' annuity payable to Sandra Boggs from February of 1989 until her death;

3. A percentage of the IRA account which was created in the "roll over" of Isaac Boggs, Jr's distribution of the BellSouth Management Savings Plan, based on Dorothy Boggs' community interest in those funds; and

4. A portion of the ESOP shares of AT & T stock.

On December 17, 1992, Plaintiff filed her Complaint for Declaratory Judgment seeking a ruling that ERISA preempts the application of Louisiana's community property and succession laws to the assets of, or the benefits payable under, the plan and/or the IRA.

## II. *ANALYSIS*

■ Louisiana is in the minority of states that provide for a community property regime among spouses where "[e]ach spouse owns a present undivided one-half interest in the community property." La.Civ.Code Ann. art. 2336 (West 1994). Under Louisiana's community property regime, a non-employee spouse is granted a right to claim pension and survivorship benefits even if such do not become payable until after the community is dissolved as long as both the pension and the community coexist for some period of time. *T.L. James & Co. v. Montgomery,* 332 So.2d 834 (La.1975) and *Sims v. Sims,* 358 So.2d 919 (La.1978). The Court's reasoning in these two cases was that the future pension right, which was being built up during the existence of the community, constituted "an incorporeal, movable right" and had to be so classified at the dissolution of the community. *T.L. James & Co.,* 332 So.2d at 851. Under Louisiana law, therefore, Dorothy Boggs owned a substantial interest in the pension and retirement plans of Isaac Boggs, Jr. because she was married to him during thirty of the thirty-six years that he was employed with South Central Bell.

While Plaintiff does not refute that Louisiana's community property laws operate as described above, Plaintiff argues that ERISA preempts state community property law. Plaintiff's preemption argument relies upon a single provision of ERISA. Specifically, Plaintiff contends that section 514(a) of ERISA, 29 U.S.C. § 1144(a) (1976), explicitly preempts the state law at issue. Section 514(a) provides that ERISA "shall supersede any and all state laws insofar as they ... relate to any employee benefit plan...." After carefully considering the arguments of counsel and the applicable law, the court finds that ERISA does not preempt Louisiana's community property law.[1]

---

1. Although Plaintiff did not argue that section 206(d)(1) of ERISA, 29 U.S.C. § 1056(d)(1) (1976), preempts Louisiana's community property law, this court, for purposes of completeness, will consider whether this section supersedes the state law at issue herein. Section 206(d)(1) provides that "[e]ach pension shall provide that benefits provided under the plan may not be assigned or alienated." This court finds, however, that there are two reasons why ERISA's anti-alienation provision does not operate to preempt Louisiana's community property law.

While there is no question that the Supremacy Clause gives Congress the power to preempt state laws, both Congress and the courts have traditionally deferred to state property law because of the strong state interest in determining the nature of property rights. *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1 (1979). The courts have, however, recognized that ERISA broadly preempts state law because Congress was primarily concerned with requiring all pension plans to operate under a uniform legal scheme and to eliminate the threat of conflicting state regulation. Note, *Ablamis v. Roper: Preemption of the Nonemployee Spouse's Community Property Rights in ERISA Pension Plans,* 49 Wash. & Lee L.Rev. 1085 (1992) (citing *FMC Corp. v. Holliday,* 498 U.S. 52, 58–59, 111 S.Ct. 403, 408, 112 L.Ed.2d 356 (1990)). Despite its broad preemption provision, ERISA does not preempt state laws such as Louisiana's community property laws which were not specifically designed to affect ERISA benefit plans. While such state laws may indirectly implicate an ERISA pension plan, they do not "relate to" an employee benefit plan as required to trigger the preemption provisions of section 514(a). *Mackey v. Lanier Collection Agency & Services, Inc.,* 486 U.S. 825, 829, 108 S.Ct. 2182, 2185, 100 L.Ed.2d 836 (1988). Instead, ERISA will preempt Louisiana's community property law if and only if: (1) Congress has positively expressed its intent to preempt the state law and (2) the state law does major damage to a clear and substantial federal interest. *Hisquierdo,* 439 U.S. at 581, 99 S.Ct. at 808.

Enforcement of Louisiana's community property law simply would not cause "major damage" to any "clear and substantial federal interest" served by ERISA. In enacting ERISA, Congress declared that its policy was the protection of employees vis a vis their employers. 29 U.S.C. § 1001. Not surprisingly, ERISA regulates funding, disclosure, and the vesting of rights in the plans. The Act does not display any particular interest in preserving maximum benefits to any particular beneficiary.

Although the Act provides a method for the participant to designate a beneficiary, this procedure appears to be another provision for the protection of the employee in his relations with his employer and not a federal decision to upset the balance of spousal rights protected by state law.

*Employees Savings Plan of Mobil Oil Corp. v. Geer,* 535 F.Supp. 1052, 1055 (S.D.N.Y. 1982).

In two cases involving federal pensions, the Supreme Court found that the state domestic relations laws so conflicted with federal objectives that the state laws were preempted. For example, the Court held that state courts could not allocate military retirement pay pursuant to state community property laws upon dissolution of a marriage because such state laws conflicted with the federal military retirement scheme. *McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981). In *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1970), the Court held that pensions under the Railroad Retirement Act of 1974 were not community property subject to division upon dissolution of the marriage because such division would conflict with an allocation of a federal benefit intended by Congress.

These two cases, in which the Court found the requisite damage to federal interests to preempt state property law, differ substantially from the case at hand. In *McCarty,* the Court found that the federal statute providing retirement pay to military officers

First, Congress proscribed alienation and assignment of pension benefits to protect an employee from his own financial improvidence in dealing with third parties, and Congress did not intend to alter traditional familial and support obligations. *Savings and Profit Sharing Fund of Sears Employees v. Gago,* 717 F.2d 1038, 1041 (7th Cir.1983) (citing *American Telephone and Telegraph Co. v. Merry,* 592 F.2d 118, 124 (2nd Cir.1979)). Secondly, "alienate" means "to convey or transfer to another (as title, property, or right): part voluntarily with ownership of." Webster's Third New International Dictionary (1981). By virtue of Louisiana's community property law, Dorothy Boggs' rights in the benefits were acquired by her directly at the outset and did not represent a transfer to her of rights which had previously accrued to Isaac Boggs, Jr. Thus, operation of community property law to the present pension benefits does not constitute an assignment or alienation prohibited by section 206(d)(1).

served major federal goals by providing for the needs of retired officers and by facilitating the management of military personnel by encouraging enlistment, reenlistment, and retirement at an appropriate age. Similarly, in *Hisquierdo*, the Court noted that the Railroad Retirement Act of 1974 created a system of federally administered benefits similar to Social Security. Under this Act, Congress "carefully targeted" the benefits to be provided, consciously "fixed an amount thought appropriate to support an employee's old age and to encourage the employee to retire," and specifically limited the extent to which a divorced spouse may reach these assets. *Hisquierdo*, 439 U.S. at 584–85, 99 S.Ct. at 810. Moreover, the present controversy involves privately funded pensions whereas both *McCarty* and *Hisquierdo* actually involved federally funded pensions.

Importantly, the Supreme Court suggested that the Railroad Retirement Act, found to preempt community property law, should be distinguished from ERISA:

In [the Railroad Retirement Act], Congress has granted a separate spouse's benefit, and has terminated that benefit upon absolute divorce. Different considerations might well apply where Congress has remained silent on the subject of benefits for spouses, particularly when the pension program is a private one which federal law merely regulates. *See* Employee Retirement Income Security Act of 1974, 88 Stat. 829, 29 U.S.C. § 1001 *et seq.* Our holding intimates no view concerning the application of community property principles to benefits payable under programs that possess these distinctive characteristics.

*Id.* 439 U.S. at 591, n. 24, 99 S.Ct. at 813, n. 24. ERISA merely imposes standards on private administrators of private benefit plans. It does not evince any special concern for preserving all of the benefits of the plans for the participants. Application of Louisiana's community property law in this case will not do major damage to any federal interest, and thus, the Supremacy Clause does not require that the state law be overridden.

The result reached herein is also supported by the Supreme Court's dismissal, for want of a substantial federal question, of the

appeal in *Carpenters Pension Trust Fund v. Campa*, 89 Cal.App.3d 113, 152 Cal.Rptr. 362 (1979), *appeal dismissed*, 444 U.S. 1028, 100 S.Ct. 696, 62 L.Ed.2d 664 (1980). The effect of a dismissal for want of a substantial federal question is to leave the decision of the lower court undisturbed and "without doubt [to] reject the specific challenges presented in the statement of jurisdiction." *Mandel v. Bradley*, 432 U.S. 173, 97 S.Ct. 2238, 53 L.Ed.2d 199 (1977). *See also* 16 C. Wright, A. Miller, E. Cooper & E. Glessman, *Federal Practice and Procedure* § 4014 at 638–39 (1977).

In *Campa*, the state court held that ERISA did not preclude the states from dividing pension rights in marital dissolution proceedings. Significantly, the first question presented to the Supreme Court in *Campa* was:

1. Do the provisions of Title I of the Employment Retirement Income Security Act, commonly known as ERISA, supersede the provisions of the California community property law and implementing statutes and court rules insofar as they relate to an employee benefit plan covered by that Act?

Brief of Appellant at 7. *See also Savings and Profit Sharing Fund of Sears Employees v. Gago*, 717 F.2d 1038, 1043 (7th Cir. 1983). Under the doctrine established in *Mandel v. Bradley*, therefore, the Supreme Court's dismissal of *Campa* for want of a substantial federal question serves as a decision on the merits that the preemption section of ERISA does not override California's community property law. Likewise, this court ascertains no reason why ERISA would preempt Louisiana's community property law.

This court notes two additional reasons why ERISA should not preempt state community property law. First, Congress enacted the Retirement Equity Act of 1984 as an amendment to ERISA, in part, as a response to the judicial uncertainty of whether ERISA's bar to the transfer of plan benefits to third parties applied to the apportionment of benefits to a nonemployee spouse pursuant to a divorce settlement. As a result of this amendment, ERISA now specifically grants a divorced nonemployee spouse the right to receive and dispose of benefits awarded in a

divorce proceeding but does not explicitly recognize state-created property rights in a married nonemployee spouse. Thus, finding that ERISA preempts state community property law would provide a strong incentive for a nonemployee spouse in a community property state to obtain a divorce before death as the only method of retaining transmissible property rights in the pension. Note, *Ablamis v. Roper: Preemption of the Nonemployee Spouse's Community Property Rights in ERISA Pension Plans*, 49 Wash. 8 Lee L.Rev. 1085 (1992). Secondly, because Louisiana law provided Dorothy Boggs with an undivided interest in the retirement plans at the time that the fund was established, which was well before ERISA was passed in 1974, allowing ERISA to preempt her state created property right would violate the Fifth Amendment's prohibition against the government's taking private property without just compensation. Based upon the foregoing reasons;

IT IS ORDERED that Plaintiff's Motion for Summary Judgment, which seeks a declaration that ERISA preempts Louisiana's community property laws, be and is hereby DENIED.

IT IS FURTHER ORDERED that Judgment be and is hereby rendered in favor of Defendants, DECLARING that ERISA does not preempt Louisiana's community property laws.