Ernest **CLARDY**, Nadine Clardy, Guardian for Kenneth Clardy, and Kenneth Clardy, Plaintiffs,

v.

**ATS, INC. EMPLOYEE WELFARE BENEFIT PLAN and Advanced Administrative Companies, Defendants.**

No. 1:95CV135–D–D.

United States District Court, N.D. Mississippi, Eastern Division.

March 26, 1996.

Barry J. Walker, Roy J. Farrell, Tupelo, Mississippi, for Plaintiffs.

Gary P. Snyder, Olive Branch, Mississippi, John A. Claro, Oklahoma City, Oklahoma, for Defendants.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

Presently before the court is the motion of the defendants for the entry of partial summary judgment on their behalf. Finding the motion not well taken, the same shall be denied.

### Factual Summary [1]

The plaintiff Kenneth Clardy received serious injuries as a result of an automobile crash which occurred on August 19, 1993. Another individual, while pursued by law enforcement officials, crashed the automobile he was driving at the time into a utility pole. Kenneth was a passenger in this vehicle. As a result of his injuries, Kenneth Clardy incurred substantial hospital and related medical bills. The plaintiffs Earnest and Nadine Clardy made a claim against their insurer, ATS, Inc. Employee Welfare Benefit Plan ("ATS"), for payment of these medical expenses. Both sides concede that the ATS Employee Welfare Benefit Plan is governed by ERISA, 29 U.S.C. § 1001 et seq., and that Advanced Administrative Companies is the administrator of this ERISA plan. ATS denied the plaintiffs' claim for coverage.[2] The plaintiff Kenneth Clardy, through his Guard-

ian, also instituted an action against the driver of the vehicle for his role in producing his injuries. That action was settled by the parties to that action for the amount of $105,-000.00 on May 26, 1994. The bulk of this amount consisted of the policy limit of the driver's applicable insurance policy, $100,-000.00. From that policy amount, $33,333.34 was paid to Kenneth Clardy, $33,333.33 was paid to the plaintiff's attorney as his fee, and the remaining $33,333.33 was paid to the Regional Medical Center in Memphis, Tennessee ("The Med") in settlement of its claim against the defendants in that action.[3]

The plaintiffs later filed suit against ATS in the Chancery Court of Lee County, Mississippi, on November 28, 1994, seeking the payment of medical expenses for Kenneth Clardy under their employee benefit plan. The defendants subsequently removed the action to this court on April 25, 1995. The terms of the plaintiffs' benefit plan provide in relevant part:

11. Right of Reimbursement: If a covered person is injured through the act or omission of another person, the Plan shall provide the benefits only on condition that the employee shall agree in writing:

a. To reimburse the Plan to the extent of benefits provided, immediately upon collection of damages by him, whether by legal action, settlement, or otherwise, and including but not limited to motor vehicle insurance;

. . . . .

b. The employee's agreement is binding on his covered dependents also.

On February 14, 1994, the plaintiffs Earnest and Nadine Clardy executed a written agreement to reimburse ATS for benefits, subject to a reasonable cost of collection. This agreement was not signed by Kenneth Clar-

---

1. In ruling on a motion for summary judgment, the court is not to make credibility determinations, weigh evidence, or draw from the facts legitimate inferences for the movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Rather, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. The court's factual summary is so drafted.

2. The particular provision relied upon by the plan administrator in denying coverage forbade recovery of expenses resulting from the participation in the commission of a felony or illegal activity.

3. The Med asserted a "hospital lien" against the liability proceeds of that action.

dy, nor was it signed on his behalf with approval of a state court Chancellor.

The defendants have now filed their motion for partial summary judgment, seeking a ruling from this court that pursuant to the reimbursement agreement signed by Earnest and Nadine Clardy, they are entitled to a set-off against any judgment assessed against them in light of the settlement against the defendants in the prior state court action.

### Discussion

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.C.P. 56(c). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once a properly supported motion for summary judgment is presented, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Brothers v. Klevenhagen*, 28 F.3d 452, 455 (5th Cir.1994). "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Federal Sav. & Loan Ins. v. Kralj*, 968 F.2d 500, 503 (5th Cir.1992). The facts are reviewed drawing all reasonable inferences in favor of the party opposing the motion. *Matagorda County v. Russell Law*, 19 F.3d 215, 217 (5th Cir.1994).

## II. THE MOTION

The argument of the defendants is simple. They contend that pursuant to the policy provisions dictating reimbursement, they are entitled to receive "credit" toward any judg-

ment for the proceeds already received by the plaintiffs in settlement of the previous state court action.

## A. CHANCERY COURT APPROVAL OF THE ASSIGNMENT OF MINOR'S RIGHTS

The plaintiffs' initial response to the defendants motion is that the "reimbursement agreement" signed by Earnest and Nadine Clardy is invalid as it has not been approved by the Chancery Court. Under Mississippi law, Chancery Court approval is required in order to validly assign a minor's right to insurance proceeds. *Methodist Hospitals of Memphis v. Marsh*, 518 So.2d 1227, 1228 (Miss.1988); *McCoy v. Preferred Risk Ins. Co.*, 471 So.2d 396, 398 (Miss.1985). Using this rationale, the plaintiffs argue that a Chancellor must likewise approve any assignment of litigation proceeds. The defendants counter that this Mississippi state rule of law as enunciated in *Methodist Hospitals* and *McCoy* is preempted by ERISA as the rule of state law "relates to" an ERISA-governed plan. The defendants would have this court hold that, in this case, the reimbursement agreement is valid notwithstanding the absence of a Chancellor's approval.

ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). Preemption under ERISA is "deliberately expansive." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987). "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to the plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983); *Hook v. Morrison Milling Co.*, 38 F.3d 776, 781 (5th Cir.1994). A state law may "relate to" a plan "even if that law was not designed to affect such plans, and even if its effect is only indirect." *Rokohl v. Texaco, Inc.*, 77 F.3d 126, 129 (5th Cir.1996) (citing *Rozzell v. Security Servs., Inc.*, 38 F.3d 819, 821 (5th Cir.1994)). Nonetheless, ERISA preemption is not all-encompassing, and state actions which affect em-

ployee benefit plans in "too tenuous, remote, or peripheral a manner" will not justify a finding that the law "relates to" a plan. *Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21.

■ Preemption of a state law concerning domestic relations is uncommon, even under ERISA. The United States Supreme Court has repeatedly noted that in enacting ERISA, "Congress [did] not intend to preempt areas of traditional state regulation." *E.g., FMC Corp. v. Holliday,* 498 U.S. 52, 62, 111 S.Ct. 403, 410, 112 L.Ed.2d 356, 367 (1990). "The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1 (1979) (quoting *In re Burrus,* 136 U.S. 586, 593–94, 10 S.Ct. 850, 853, 34 L.Ed. 500 (1890)). "Because domestic relations matters are primarily matters of state law, we have consistently recognized that Congress, when it passes general legislation, rarely intends to displace state authority in this area." *Mansell v. Mansell,* 490 U.S. 581, 587, 109 S.Ct. 2023, 2028, 104 L.Ed.2d 675 (1989). As a consequence, federal law will only preempt a state law pertaining to domestic relations if: 1) Congress has positively expressed its intent to preempt the state law and 2) the state law does major damage to a clear and substantial federal interest. *Boggs v. Boggs,* 849 F.Supp. 462, 465 (E.D.La.1994) (citing *Hisquiedo,* 439 U.S. at 581, 99 S.Ct. at 808).

ERISA does indeed state its intent to preempt state law by positive enactment. 29 U.S.C. § 1144(a). However, this court can find no damage to any clear and substantial federal interest in this case which would justify preemption of this state law of domestic relations. Indeed, it is the opinion of this court that the opposite is true. The most fundamental concern of Congress in enacting ERISA was "the continued well-being and security of millions of employees, retirees, and their dependents." 29 U.S.C. § 1001a(a)(3). Displacing this state law requirement which polices the disposition of a minor's rights would take away a protection from the dependents of an employee, rather than ensure their continued well-being and security.

There is, however, a federal interest in maintaining a uniform legal scheme for the enforcement of ERISA:

> The courts have, however, recognized that ERISA broadly preempts state law because Congress was primarily concerned with requiring all pension plans to operate under uniform legal scheme and to eliminate the threat of conflicting state regulation.

*Boggs,* 849 F.Supp. at 465. Nonetheless, the defendant has not demonstrated to this court that various state laws conflict in this regard. States uniformly require court approval before the rights of minors are compromised. *E.g., Harden v. Southern Baptist Hosp.,* 663 So.2d 443, 448 (La.App. 4 Cir.1996); *Bateski v. Ransom,* 658 So.2d 630, 632 (Fla.Ct.App. 2d Dist.1995); *In re Estate of Stepp,* 271 Ill.App.3d 817, 208 Ill.Dec. 198, 199, 648 N.E.2d 1120, 1121 (1995).

■ As for federal interest in the subrogation of an ERISA plan or administrator, the court is of the opinion that there does not appear to be one. The act does not display any particular interest in preserving maximum subrogation rights on behalf of a plan or administrator:

> As with many other substantive terms of welfare plans, ERISA says nothing about subrogation provisions. ERISA neither requires a welfare plan to contain a subrogation clause nor does it bar such clauses or otherwise regulate their content.

*Ryan v. Federal Express Corp.,* 78 F.3d 123, 127 (3rd Cir.1996). Rights of subrogation are contractual, and there is no federal common law rule of subrogation in ERISA cases. In that there is no "major damage to a clear and substantial federal interest" in this case, this state law of domestic relations is not preempted.

Subrogation rights have nonetheless been a foundation for ERISA preemption outside of the domestic relations context. In *FMC v. Holliday,* the United States Supreme Court determine that a Pennsylvania state law which prohibited the subrogation of certain tort recovery proceeds was preempted by

ERISA. *Holliday,* 498 U.S. at 65, 111 S.Ct. at 411, 112 L.Ed.2d at 369. Even if the law in question today was not one pertaining to domestic relations, that decision is distinguishable from this case in several respects. For example, the Supreme Court in *Holliday* found important the conflict in state regulation brought about by the Pennsylvania statute as against states without such legislation. *Id.* at 59, 111 S.Ct. at 407, 112 L.Ed.2d at 365–66. As already noted by this court, the defendants in this case have not demonstrated such a discrepancy, nor is this court aware of such. More importantly, and unlike in *Holliday,* the state law under consideration today does not prevent subrogation of claims, nor does it even directly address the matter of subrogation. The administration of a minor's estate is entirely a matter of state law, and is law of general application which affects a broad range of matters entirely unrelated to ERISA plans. "[A] preemption provision designed to prevent state interference with federal control of ERISA plans does not require the creation of a fully insulated legal world that excludes these plans from regulation of any purely local transaction." *Richmond v. American Syst. Corp.,* 792 F.Supp. 449, 458 (E.D.Va.1992) (quoting *Rebaldo v. Cuomo,* 749 F.2d 133, 138 (2d Cir.1984)). The defendants in this case would have this court preempt not a state law which impinges upon contractual subrogation rights under ERISA, but a state law of general application which has only an incidental effect upon an ERISA plan. The state law in question today relates to ERISA in "too tenuous, remote, or peripheral a manner" to be preempted in this case.[4]

 Even if this court were to declare that this state law requirement is preempted by ERISA in this case, the undersigned does not believe that the matter of the enforceability of the "reimbursement agreement" would be resolved. The requirement of a chancellor's approval under Mississippi law is not merely a "rubber stamp" to ensure that the

assignment of rights is fair and equitable to the child. It is, rather, what enables the parents to make such an assignment on behalf of the child. *See Striplin,* 652 So.2d at 1104 ("As Striplin was the only party entitled to those proceeds via his injuries, his parents had no right to assign them absent **prior court approval.**") (emphasis added); *Methodist Hosps.,* 518 So.2d at 1228 ("**[T]he mother had no legal authority,** in the absence of **prior** chancery court approval, to execute any document binding [her child's] estate insofar as the insurance proceeds to which he was entitled.") (emphasis added). It is a fundamental premise of law that a person generally does not have the right to assign or control the rights and property of another. This is true even between parent and child. "[P]arents cannot contract away rights vested in minor children." *Lawrence v. Lawrence,* 574 So.2d 1376, 1381 (Miss. 1991). Contracts by a parent which dispose of a child's right to support, for example, are void as a matter of Mississippi public policy. *Calton v. Calton,* 485 So.2d 309, 310 (Miss. 1986).

In light of this principle, various doctrines such as agency, guardianship and conservatorship have emerged which permit the control of another's rights within specified boundaries. By statute, the parents of a minor child in Mississippi are his natural guardians. Miss.Code Ann. § 93–13–1 ("The father and mother are the joint natural guardians of their minor children ... "). As guardians, the parents have the authority to conduct certain business transactions on behalf of the child when authorized to do so in each particular instance by a Chancellor. *E.g.,* Miss.Code Ann. § 93–13–53 (sale of personalty); Miss.Code Ann. § 93–13–49 (purchase of land); Miss.Code Ann. § 93–13–45 (expenditures to improve realty owned by minor or convert realty into money). In each instance it is the approval of the Chancellor which grants, for the purpose of that

---

4. While the decision is not precedentially binding upon this court, the Mississippi Supreme Court has also addressed this same aspect of ERISA preemption in the case of *Cooper Tire v. Striplin,* 652 So.2d 1102 (Miss.1995). In *Striplin,* the Mississippi Supreme Court came to the conclu-

sion that "[t]he subject of minor's estates is a matter within the field of domestic relations not governed by ERISA," and that the law did not "directly or indirectly relate to pension plans." *Striplin,* 652 So.2d at 1103.

transaction, authority to the parent to exercise control over the child's rights. *Mathews v. Williams,* 633 So.2d 1038, 1039 (Miss.1994) ("The guardian has no authority to bind the estate of his ward without the sanction of the Chancery Court or the Chancellor."); *Welch v. Childers,* 195 Miss. 415, 420, 15 So.2d 690, 691 (1943) (same).

■ By holding that ERISA preempts the requirement of a Chancellor's approval, this court would divest parents of the ability granted under Mississippi law to make an assignment of their child's rights. If the state law is displaced by federal in this regard, from whence does the parents' power to assign their child's rights arise? If they have none, then the "reimbursement agreement" in the case at bar is still void because the parents had no authority to assign their child's rights. In enforcing ERISA and ERISA-governed plans, federal courts are empowered with the ability to create and interpret a body of federal common law. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 110, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989) (quoting *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 1558, 95 L.Ed.2d 39 (1987)). In order to hold this reimbursement agreement valid as against the rights of Kenneth Clardy, this court would have to determine that parents have the unilateral authority under federal common law to assign rights belonging to their children. This the court would decline to do, for even under federal common law parents should not possess unfettered control over the full panoply of their child's legal rights. *See Firestone,* 489 U.S. at 110, 109 S.Ct. at 954 (quoting *Pilot Life,* 481 U.S. at 56, 107 S.Ct. at 1558 (noting federal courts are "to develop a 'federal common law of rights and obligations under ERISA-regulated plans' ... guided by principles of trust law.")).

■ Lastly, the defendants charge that if this court does not entitle them to reimbursement in this case, the plaintiffs will receive a windfall by being able to keep not only the settlement proceeds but also any recovery received in the case at bar. Considering the facts of the case, this argument does indeed have a measure of appeal. Similar facts have persuaded other courts to enforce subrogation agreements as a matter of equity:

> In *Hamrick,* a child received payments from a medical services insurer for medical expenses incurred in an automobile accident. The child settled a subsequent personal injury claim against the tort-feasor but refused to reimburse the insurer on the theory that the infant was not a party to the contract with the insurer and thus not bound by the subrogation agreement provision contained therein.

The *Hamrick* court held that under equitable principles, the minor "should not be allowed to receive the medical benefits of a contract and disaffirm the subrogation clause." The court explained that "to allow a minor who recovers from a tortfeasor for medical expenses paid under a medical insurance contract to keep those proceeds despite a subrogation clause requiring their return to the insurer simply because the parent and not the child entered into the contract, defies equity." [cite omitted] Thus the court in *Hamrick* concluded that "it seems reasonable and fair to bind him to a subrogation clause executed by his parent. Otherwise, he might receive a windfall, and society might possibly face a higher rate structure."

*J.C. Penney Co. Vol. Employee's Beneficiary Ass'n Med. Benefit Plan v. McNaul,* 1988 WL 236362, * (W.D.Okla.1988) (discussing *Hamrick v. Hospital Serv. Corp.,* 110 R.I. 634, 296 A.2d 15 (R.I.1972)). At this juncture of the proceedings, the court declines to likewise wave the wand of equity and create an enforceable contractual obligation under this agreement on behalf of Kenneth Clardy where none exists. *But see Striplin,* 652 So.2d at 1104 ("If Cooper Tire is due consideration, it would be based upon its own equitable claim for reimbursement of necessary medical expenses under the doctrine of quasi-contract."). In light of the defendants' "windfall" argument, however, the undersigned simply notes that while this court has

ruled the "reimbursement agreement" unenforceable, such does not necessarily mean that the plaintiffs will be entitled to obtain a double recovery for any injuries or damages suffered.[5] Likewise, today's pronouncement by the court does not relieve the plaintiffs of their duty to mitigate damages, and any such mitigation will be considered at the proper time in any assessment of damages awarded in this case.

## CONCLUSION

It is the opinion of this court that the Mississippi law requiring a Chancellor's approval before a parent may contract away a minor's legal rights is not preempted by ERISA in this case. As a consequence, the "reimbursement agreement" signed by Earnest and Nadine Clardy in this case is not enforceable against Kenneth Clardy in this case. The defendants' motion for partial summary judgment in this cause shall be denied.

A separate order in accordance with this opinion shall issue this day.

---

**5.** In their submissions to the court, the plaintiffs seek to distinguish the amounts received by Kenneth Clardy in settlement as compensation for "pain and suffering" and other types of damages distinct from the payment of medical expenses as sought in this case. The distinction is important, the plaintiffs urge, because under Mississippi law, a claim for medical expenses borne by a minor does not belong to the minor, but to his parents. *See McLain v. West Side Bone & Joint Center*, 656 So.2d 119, 122 (Miss.1995); *Haver v. Hinson*, 385 So.2d 605, 609 (Miss.1980); *Lane v. Webb*, 220 So.2d 281, 285 (Miss.1969); *St. Regis Paper Co. v. Seals*, 211 So.2d 547, 549 (Miss. 1968). As such, they are the only parties who can bring suit for such damages—the child is not ultimately liable for them. *McLain*, 656 So.2d at 122; *Haver*, 385 So.2d at 609. However, this legal distinction does not prevent such a parent from seeking those damages in a suit brought on behalf of the child. *Lane*, 220 So.2d at 286. In the case at bar, it appears that Ms. Clardy brought the state court action against the driver of the vehicle on behalf of Kenneth Clardy, and therefore damages for medical expenses were indeed recoverable in that action. Indeed, while this court is not aware of how the Med's "hospital lien" arose in the initial state court action, its existence indicates that medical expenses were contemplated as part of that settlement.