# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-CA-00465-SCT

*IN RE: GUARDIANSHIP OF RESHAN DANIELLE
HOLMES, A MINOR: BAUHAUS USA, INC.*

*v.*

*LILLIE REGINA HOLMES COPELAND,
NATURAL GUARDIAN AND NEXT FRIEND OF
RESHAN DANIELLE HOLMES, A MINOR,
BANCORPSOUTH BANK AND BILL BENSON,
CHANCERY CLERK*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/7/2006 |
| TRIAL JUDGE: | HON. TALMADGE D. LITTLEJOHN |
| COURT FROM WHICH APPEALED: | LEE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | THOMAS H. LAWRENCE |
| | POLLY MONTGOMERY HALEY |
| | C. R. MONTGOMERY |
| ATTORNEYS FOR APPELLEES: | ROY O. PARKER, JR |
| | LES ALVIS |
| | GARY L. CARNATHAN |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 09/27/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GRAVES, JUSTICE, FOR THE COURT:**

### FACTS AND PROCEDURAL HISTORY

¶1.    Rashan Danielle Holmes, a minor, was injured in an automobile accident on June 1,

1996.  Holmes was covered under the Bauhaus Group Employee Benefit Plan (the Plan) as

a dependent of her mother and guardian, Lillie Regina Holmes Copeland.[1]  The Plan

advanced payments for Holmes' medical expenses of more than $46,000.[2]

¶2.     The Plan contains a reimbursement and subrogation clause, which states:

> Medical care benefits are not payable to or for a person covered under this
> Plan when the injury or illness to the Covered Person occurs through the act,
> omission or alleged negligence of another person or which arises out of any
> claim or cause of action which may accrue against any third party for
> responsible injury, illness  or death. . . .
>
> However, the plan may elect to advance payment for Medical Care expenses
> incurred for an injury or illness in which a third party may be liable if the
> Covered Person agrees to the following:
>
> The Covered Person will reimburse the Plan out of the Covered Person's
> recovery for all benefits paid by the Plan.  The Plan will be reimbursed prior
> to the Covered Person receiving any monies recovered from a Third Party or
> their insurer as a result of judgment, settlement or otherwise. . . .

¶3.     Copeland, on behalf of Holmes, filed suit against third-party tortfeasors and

subsequently entered into a settlement agreement for $750,000.  Bauhaus asserted a

subrogation lien on the advance payments of medical benefits to Holmes.

¶4.     Copeland then filed a Petition for Authority to Settle Doubtful Claim of Minor,

requesting approval of the final settlement offer.  Copeland agreed that the portion of the

settlement over which rights were contested, $78,161.47, would be deposited into the registry

of the Lee County Chancery Court until resolution of rights by the court.  Further, Copeland

asked the court to find the subrogation claim invalid since Holmes was not made whole by

---

[1]Copeland was an employee of Bauhaus.

[2]Copeland asserts damages of $46,336.31; Bauhaus asserts that the damages were $46,229.45.

the settlement. Subsequently, the chancery court approved the final settlement and released the tortfeasors but left the $78,161.47 in the court registry.

¶5. Bauhaus filed a motion for summary judgment on January 15, 2004, asserting that Mississippi law is pre-empted by the Employee Retirement Income Security Act of 1974 (ERISA) and that the plan provides Bauhaus with the right of full reimbursement. The chancery court denied Bauhaus' motion on June 4, 2004, finding that ERISA does not pre-empt Mississippi law. Specifically, the court held: "After reviewing the briefs of the parties, and the pertinent case law, including the federal law in this case, the Court finds that the case law in regard to this matter has been well settled, and that the administration of a minor's estate is entirely a matter of state law, and is not pre-empted by ERISA."

¶6. By opinion issued on October 7, 2005, and subsequent order on March 7, 2006, the chancery court granted Copeland's petition to settle doubtful claim and ordered disbursement to Holmes of the funds held in the registry. Thereafter, Bauhaus filed this appeal, raising the following issues: 1) Whether the chancery court incorrectly held that Mississippi's made-whole rule applied to cases involving minors despite the Mississippi Supreme Court's ruling in *Yerby v. United Health Care Insurance Co.*, 846 So. 2d 179 (Miss. 2002); and 2) whether the chancery court incorrectly held that ERISA does not pre-empt Mississippi's common law rule requiring chancery court approval to assign a minor's right to insurance proceeds. This Court finds that ERISA does not pre-empt state law in the instant case and affirms the judgment of the Lee County Chancery Court.[3]

---

[3]Even if we determined that ERISA pre-empts state law, Bauhaus' claim that it had a right to reimbursement from a non-party to its plan would have to be analyzed under federal common law. *See* *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 110, 109 S. Ct. 948,

## ANALYSIS

¶7.    The deciding issue in this case is whether ERISA pre-empts the right of the state court with regard to assigning a minor's rights to insurance proceeds.  This issue has previously been addressed by this Court.  *See Cooper Tire & Rubber Co. v. Striplin,* 652 So. 2d 1102 (1995).  In *Striplin*, this Court held that ERISA does not pre-empt state law requiring court approval for contracts affecting a minor's estate with regard to subrogation rights of the ERISA plan to insurance proceeds due to the child.  The Court found:

> It is clear that state courts have traditionally regulated minors' business. *Miss. Const. Art. 6 § 159* ("The chancery court shall have full jurisdiction in the following matters and cases, viz: (d) Minor's business"); *Alack v. Phelps*, 230 So. 2d 789 (Miss. 1970) (minors are under the disability of age and cannot legally act for themselves, therefore, state equity courts are required to protect their interest).  For these reasons, Cooper Tire's pre-emption argument is without merit.

*Id.* at 1104.  Further, this Court reiterated the necessity of court approval prior to assigning a child's rights to insurance proceeds.  *See Methodist Hosps. of Memphis v. Marsh*, 518 So. 2d 1227 (1988) (mother had no legal authority, absent prior chancery court approval, to execute any document granting a lien against the estate of an injured minor); and *McCoy v. Preferred Risk Ins. Co.*, 471 So. 2d 396 (1985) (parents had no authority to assign uninsured motorist benefits to hospital).

¶8.    The United States District Court for the Northern District of Mississippi found that ERISA does not pre-empt state law in the instant case.[4]  The Fifth Circuit Court of Appeals

---

103 L. Ed. 2d 80 (1989).

[4] *Bauhaus USA, Inc. v. Copeland*, 2001 U.S. Dist. LEXIS 24108 (N.D. Miss. 2001).

4

affirmed the district court's dismissal of the suit as not authorized by ERISA but did not reach the pre-emption argument.[5]

¶9.     In the factually similar case of ***Clardy v. ATS, Inc. Employee Welfare Benefit Plan***, 921 F. Supp. 394 (N.D. Miss. 1996), the District Court set out the following standard: "[F]ederal law will only preempt a state law pertaining to domestic relations if: 1) Congress has positively expressed its intent to preempt the state law and 2) the state law does major damage to a clear and substantial federal interest." *Id*. at 398 (citing ***Boggs v. Boggs***, 849 F. Supp. 462, 465 (E.D. La. 1994), *rev'd*, 520 U.S. 833, 117 S.Ct. 1754, 138 L. Ed. 2d 45 (1997), and ***Hisquierdo v. Hisquierdo,*** 439 U.S. 572, 581, 99 S. Ct. 802, 59 L.Ed. 1 (1979)). The District Court set out that the "ERISA preemption is not all-encompassing, and state actions which affect employee benefit plans in 'too tenuous, remote, or peripheral a manner' will not justify a finding that the law 'relates to' a plan." The District Court further found:

> ERISA does indeed state its intent to preempt state law by positive enactment. [. . .] However, this court can find no damage to any clear and substantial federal interest in this case which would justify preemption of this state law of domestic relations. Indeed, it is the opinion of this court that the opposite is true. The most fundamental concern of Congress in enacting ERISA was "the continued well-being and security of employees and their dependents." [. . .] Displacing this state law requirement which polices the disposition of a minor's rights would take away a protection from the dependents of an employee, rather than ensure their continued well-being and security.

*Clardy*, 921 F. Supp. at 398 (citations omitted). The *Clardy* court further found:

> [T]he state law under consideration today does not prevent subrogation of claims, nor does it even directly address the matter of subrogation. The administration of a minor's estate is entirely a matter of state law, and is law of general application which affects a broad range of matters entirely unrelated

---

[5]***Bauhaus USA, Inc. v. Copeland***, 292 F.3d 439 (5th Cir. 2002).

5

to ERISA plans. "[A] preemption provision designed to prevent state interference with federal control of ERISA plans does not require the creation of a fully insulated legal world that excludes these plans from regulation of any purely local transaction." [Citation omitted]. The defendants in this case would have this court preempt not a state law which impinges upon contractual subrogation rights under ERISA, but a state law of general application which has only an incidental effect upon an ERISA plan. The state law in question today relates to ERISA in "too tenuous, remote, or peripheral a manner" to be preempted in this case.

*Id.* at 399.

¶10.    In *Boggs v. Boggs*, 520 U.S. 833, 117 S.Ct. 1754, 138 L. Ed. 2d 45 (1997), the United States Supreme Court found that ERISA pre-empts a state law allowing a non-participant spouse to transfer by testamentary instrument an interest in undistributed pension plan benefits. Specifically, the Court in *Boggs* found:

> In the face of this direct clash between state law and the provisions and objectives of ERISA, the state law cannot stand. Conventional conflict pre-emption principles require pre-emption "where compliance with both federal and state regulations is a physical impossibility, . . . or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." [Citations omitted]. It would undermine the purpose of ERISA's mandated survivor's annuity to allow Dorothy, the predeceasing spouse, by her testamentary transfer to defeat in part Sandra's entitlement to the annuity §1055 guarantees her as the surviving spouse. This cannot be. States are not free to change ERISA's structure and balance.

*Id.* at 844.

¶11.    There is no direct clash between state law and the provisions of ERISA in the instant case. Moreover, compliance with both federal and state regulations is not a physical impossibility. Mississippi law does not absolutely prohibit assignment, but requires prior chancery approval.

6

¶12.     Further, there is clearly established precedent of the United States Supreme Court to support a finding against pre-emption in the instant case. The United States Supreme Court has said:

> Insofar as marriage is within temporal control, the States lay on the guiding hand. "The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *In re Burrus*, 136 U.S. 586, 593-594 (1890). Federal courts repeatedly have declined to assert jurisdiction over divorces that presented no federal question. See, *e.g., Ohio ex rel. Popovici v. Agler*, 280 U.S. 379 (1930). On the rare occasion when state family law has come into conflict with a federal statute, this Court has limited review under the *Supremacy Clause* to a determination whether Congress has "positively required by direct enactment" that state law be pre-empted. *Wetmore v. Markoe*, 196 U.S. 68, 77 (1904). A mere conflict in words is not sufficient. State family and family-property law must do "major damage" to "clear and substantial" federal interests before the *Supremacy Clause* will demand that state law be overridden. *United States v. Yazell*, 382 U.S. 341, 352 [86 S. Ct. 500, 15 L. Ed. 2d 404] (1966).

*Hisquierdo v. Hisquierdo*, 439 U.S. 572, 581, 99 S. Ct. 802, 59 L. Ed. 2d 1 (1979). *See also Rose v. Rose*, 481 U.S. 619, 625, 107 S. Ct. 2029, 95 L. Ed. 2d 599 (1987).

¶13.     In *Yazell*, the United States Supreme Court affirmed the appellate court in finding that federal law did not pre-empt a Texas statute. Specifically, the Court found:

> We decide only that this Court, in the absence of specific congressional action, should not decree in this situation that implementation of federal interests requires overriding the particular state rule involved here. Both theory and the precedents of this Court teach us solicitude for state interests, particularly in the field of family and family-property arrangements. They should be overridden by the federal courts only where clear and substantial interests of the National Government, which cannot be served consistently with respect for such state interests, will suffer major damage if the state law is applied.

*Id.* at 352. Further, "[e]ach State has its complex of family and family-property arrangements. There is presented in this case no reason for breaching them." *Id.*

7

¶14.    Bauhaus cites *Egelhoff v. Egelhoff*, 532 U.S. 141, 121 S.Ct. 1322, 149 L.Ed. 2d 264 (2001) as authority for pre-emption.  In *Egelhoff*, the United States Supreme Court held that ERISA pre-empted a Washington state statute which provided that the designation of a spouse as a beneficiary of nonprobate assets was revoked automatically upon divorce, to the extent that the state statute applied to employee benefit plans governed by ERISA.  Egelhoff divorced his wife and then died intestate two months later, with the former wife still being listed as a beneficiary under a life insurance policy and pension plan.  The life insurance proceeds were paid to the former wife.  Egelhoff's children by a previous marriage filed suit to recover the insurance proceeds and the pension plan benefits.

¶15.    The United States Supreme Court held that ERISA pre-empted the Washington state statute.  In doing so, the Court acknowledged that "Courts have disagreed about whether statutes like that of Washington are pre-empted by ERISA."  *Egelhoff*, 532 U.S. at 146.  Further, "we have recognized that the term 'relate to' cannot be taken 'to extend to the furthest stretch of its indeterminacy,' or else 'for all practical purposes pre-emption would never run its course.'"  *Id.* (Citations omitted). Moreover, "to determine whether a state law has the forbidden connection, we look both to the 'objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive,' as well as to the nature of the effect of the state law on ERISA plans."  *Id.* at 147 (citing *California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc*., 519 U.S. 3116, 325, 136 L.Ed. 2d 791, 117 S.Ct. 832 (1997)).

¶16.    The Court agreed that the Washington statute had impermissible connections with ERISA plans, finding:

The statute binds ERISA plan administrators to a particular choice of rules for determining beneficiary status. The administrators must pay benefits to the beneficiaries chosen by state law, rather than to those identified in the plan documents. The statute thus implicates an area of core ERISA concern. In particular, it runs counter to ERISA's commands that a plan shall 'specify the basis on which payments are made to and from the plan," .... In other words, unlike generally applicable laws regulating 'areas where ERISA has nothing to say,' *Dillingham*, 519 U.S. at 330, which we have upheld notwithstanding their incidental effect on ERISA plans, see, *e.g., ibid*., this statute governs the payment of benefits, a central matter of plan administration.

*Egelhoff,* 532 U.S. at 147-48.

¶17.   In analyzing the involvement of both family law and probate law, the Court reiterated that there is "a presumption against pre-emption in areas of traditional state regulation such as family law.... But that presumption can be overcome where, as here, Congress has made clear its desire for pre-emption." *Id.* at 151.

## CONCLUSION

¶18.   Family law is an area traditionally regulated by the states. There is a presumption against pre-emption. Although ERISA does state its intent to pre-empt state law by positive enactment, there is no clear intention of Congress to pre-empt cases dealing with minors' rights. Moreover, there is no damage to any clear and substantial federal interest. Accordingly, for the reasons stated above, the judgment of the Lee County Chancery Court is hereby affirmed.

¶19.   **AFFIRMED.**

**SMITH, C.J., WALLER AND DIAZ, P.JJ., CARLSON, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR. EASLEY, J., CONCURS IN RESULT ONLY.**

9